**HOGAN LOVELLS US LLP**

875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
Peter A. Ivanick
Robin E. Keller
Scott W. Reynolds

*Attorneys for the Petitioners*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
In re:                                         :
                                               :
GEROVA FINANCIAL GROUP, LTD.                   :    Chapter 15 Case No.
                                               :
          Company in a Foreign Proceeding.     :    12-_____(   )
                                               :
                                               :
-----------------------------------------------------------------x
In re:                                         :
                                               :
GEROVA HOLDINGS LTD.                           :    Chapter 15 Case No.
                                               :
                                               :    12-_____(   )
          Company in a Foreign Proceeding.     :
                                               :
-----------------------------------------------------------------x
```

## VERIFIED PETITION OF FOREIGN REPRESENTATIVES MICHAEL MORRISON, CHARLES THRESH, AND JOHN MCKENNA IN SUPPORT OF APPLICATIONS OF GEROVA FINANCIAL GROUP, LTD. AND GEROVA HOLDINGS LTD. FOR RECOGNITION OF FOREIGN MAIN PROCEEDINGS PURSUANT TO 11 U.S.C. § 1517 AND SEEKING RELATED RELIEF

Petitioners, Michael Morrison and Charles Thresh, both of KPMG Advisory Limited, and

John McKenna of Finance and Risk Service Ltd, Bermuda (the "**Petitioners**"), in their capacity

as the duly appointed foreign representatives, as defined in section 101(24) of title 11 of the

United States Code (the "**Bankruptcy Code**"), of Gerova Financial Group, Limited ("**GFG**" or the "**Company**") and Gerova Holdings Ltd. ("**GHL**", and together with GFG, "**Gerova**"), both debtors in a foreign proceeding, as defined in section 101(23) of the Bankruptcy Code, pending before the Supreme Court of Bermuda (the "**Bermuda Court**") under Matter No. 2011 No. 369 for GFG and under Matter No. 2012 No. 288 for GHL (collectively, the "**Bermuda Proceedings**'), through their attorneys Hogan Lovells US LLP, submit this verified petition (the "**Verified Petition**") pursuant to sections 1515 and 1517 of the Bankruptcy Code,[1] seeking recognition of the Bermuda Proceedings as foreign main proceedings, granting related relief under section 1520 and seeking additional relief pursuant to section 1521(a).[2] The Petitioners, in a motion filed contemporaneously with this Verified Petition, also seek provisional injunctive relief pending this Court's adjudication of the Verified Petition. In support of this Verified Petition, the Petitioners, based upon their review of third party pleadings and records, the very limited amount of Gerova's books and records in their possession, and their personal knowledge, state as follows:

## PRELIMINARY STATEMENT

1.      The Petitioners, as foreign representatives of Gerova, have commenced these Chapter 15 cases pursuant to section 1504 by filing this Verified Petition, accompanied by all certifications, statements, lists and documents required pursuant to section 1515, and Rule

---

[1] Unless otherwise indicated, all "sections" refer to sections of the Bankruptcy Code and "Chapter 15" refers to Chapter 15 of the Bankruptcy Code.

[2] Alternatively, if this Court concludes that the Bermuda Proceedings are not eligible for recognition as a foreign main proceeding, Petitioners seek recognition of the Bermuda Proceedings as a foreign non-main proceeding as defined in section 1502(5) of the Bankruptcy Code and seek related relief pursuant to section 1521 of the Bankruptcy Code.

\\NY - 038380/000001 - 2407672 v8

1007(a)(4) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), seeking recognition of, and other related relief necessary to aid, the Bermuda Proceedings.

2.      GFG and GHL are exempted limited liability companies incorporated under the laws of Bermuda, with a registered office located at Crown House, 4 Par-la-Ville Road, Hamilton HM08, Bermuda.  Until July 20, 2012, for GFG and August 20, 2012, for GHL, Gerova's registered office was located at Canon's Court, 22 Victoria Street, Hamilton HM 12, Bermuda.

3.      As is described in more detail below, from 2010 on, Gerova was primarily involved in the business of investing in and managing certain types of illiquid financial assets. Gerova planned to then use such assets as regulatory capital for insurance companies, though this strategy was not fully implemented

4.      On July 20, 2012, the Bermuda Court entered an Order appointing the Petitioners as joint provisional liquidators of GFG (the "**Winding-Up Order**"). On August 20, 2012, the Bermuda Court appointed the Petitioners as the joint provisional liquidators for GHL (the "**Order Appointing Joint Provisional Liquidators**", and together with the Winding-Up Order, the "**Liquidation Orders**").[3]  The Liquidation Orders authorize the Petitioners to, amongst other things, commence a proceeding in the United States seeking recognition of the Bermuda Proceedings under chapter 15 of the Bankruptcy Code.

5.      The Bermuda Proceedings were, according to the winding-up petitioner for GFG, commenced on the following grounds: Gerova is insolvent; it has refused its creditors' demands for payment and information; Gerova was managed by individuals whose interests conflict with

---

[3] A copy of the Winding-Up Order and the Order Appointing Joint Provisional Liquidators are annexed hereto as <u>Exhibit A</u>.

\\NY - 038380/000001 - 2407672 v8

those of Gerova and its creditors; and the nature of Gerova's assets and the actions of Gerova's management posed a substantial risk to deterioration in value of Gerova's assets.

6.     After lengthy proceedings and over the objections of Gerova's then-current management (described in more detail below), the Bermuda Court appointed the Petitioners as the joint provisional liquidators ("**JPLs**") of GFG due to GFG's inability to satisfy creditors with presently due debts.  Subsequently, upon the petition of the Petitioners, the Bermuda Court appointed the Petitioners as JPLs for GHL as well.  The Petitioners now seek recognition of the Bermuda Proceedings under Chapter 15 for the purpose of obtaining the assistance of this Court to (a) restrict and enjoin Gerova's principals, officers, directors, creditors and any other parties from taking actions in the United States that may jeopardize the value of its assets, (b) provide the Petitioners with access to any information and/or records maintained in the United States which is necessary to identify, evaluate, maximize and preserve the value of Gerova's assets, (c) provide the Petitioners with the right to appear on behalf of Gerova and, where appropriate, either pursue or defend claims pending in current litigation in the United States that Gerova is or may be a party to, and (d) assist the Petitioners in assembling and efficiently administering Gerova's assets in one proceeding so as to prevent a piecemeal disposition or degradation of assets that would undermine the Bermuda Proceedings and harm Gerova and its creditors.

7.     As demonstrated by the Verified Petition, the *Declaration of Charles Thresh in Support of Verified Petition and Related Relief Pursuant to 11 U.S.C. §§ 108, 1504, 1515, 1517, 1519, 1520, and 1521* (the "**Thresh Declaration**") and the *Memorandum of Law in Support of Verified Petition* (the "**Memorandum of Law**"), all filed contemporaneously herewith, the Petitioners, as the duly appointed foreign representatives of Gerova, are entitled to directly petition this Court for recognition of the Bermuda Proceedings under section 1509, and have

4

satisfied the requirements for recognition of the Bermuda Proceedings as foreign main proceedings under sections 1515 and 1517.

8.      The Petitioners meet the requirements for recognition of the Bermuda Proceedings as foreign main proceedings, as defined in section 1502(4) of the Bankruptcy Code, because the Bermuda Proceedings are pending in Bermuda, which is Gerova's center of its main interests for the following reasons:

(i)      Gerova's registered office has, since 2010, been located in Hamilton, Bermuda and Gerova is registered at the Bermuda Register of Companies in accordance with the Bermuda Companies Act 1981 (the "**Act**");

(ii)      Gerova was and is headquartered in Bermuda because it maintained its head office in Hamilton, where it leased over 2300 square feet of space and hired employees,[4] it listed its head office in Hamilton as its principle executive office on its filings with the Securities and Exchange Commission ("**SEC**"), it has had no other office since the establishment of the Hamilton headquarters, its registered office remains in Bermuda, and the Petitioners are indisputably headquartered in Bermuda;

(iii)      Gerova conducted its business through its Bermuda headquarters, including the purchase and management of its assets, as well as its ultimately-incomplete attempts to write policies in the insurance and reinsurance markets;

---

[4] A copy of this lease, to which GHL was the signatory, is attached to the Thresh Declaration as **Exhibit B**. An internally prepared, unaudited interim financial statement for Q1-Q3 2010 filed by Gerova's former chief operating officer on December 6, 2011 with the Bermuda Court in the Bermuda Proceedings shows approximately $2.85 million in office lease and payroll expenses for this period.

\\NY - 038380/000001 - 2407672 v8

(iv)    the situs of Gerova's assets, the bulk of which consist of contractual rights, ownership interests in certain companies and limited partnerships, and complex financial products, is properly viewed as being located at Gerova's registered office in Bermuda;

(v)    since their appointment on July 20, 2012, the Petitioners, in their capacity as court appointed officers, have directed the administration and management of Gerova from Bermuda, negotiated with other parties in litigation to which Gerova is a party, maintained (to the extent possible) Gerova's known books and records in Bermuda, and operated Gerova in Bermuda; and

(vi)    the creditor that filed a petition recognized by the Bermuda Court as justifying the winding-up proceeding for GFG, while itself located in New York, has identified Bermuda as the appropriate forum to address its claims, and other creditors of GFG have not contested the appropriateness of Bermuda as a forum for the resolution of their claims against GFG.

9.    The relief requested is necessary to effectively protect, administer and realize the value of Gerova's assets for the benefit of all creditors.  As such, the Petitioners are entitled to (i) recognition of the Bermuda Proceedings as foreign main proceedings and (ii) the relief requested herein.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P).

11.    Venue with respect to this Verified Petition is proper pursuant to 28 U.S.C. § 1410(1) because many of Gerova's principal assets in the United States, consisting of

\\NY - 038380/000001 - 2407672 v8

numerous financial contracts and other investment interests governed by New York law, either

are or can be viewed as being located in this District.  Furthermore, numerous former members

of Gerova's management maintain offices in this District.  In addition, the creditor of GFG who

successfully petitioned to have it placed into liquidation has its headquarters and established

centers of business in this District.

12.    Venue with respect to this Verified Petition is also proper pursuant to 28 U.S.C.

§ 1410(2) because Gerova is currently party to multiple pending actions in this District in both

Federal and New York State court.  Such actions are detailed further herein, in the attachments

hereto, and the other documents filed contemporaneously herewith.

## BACKGROUND

### A.    Overview of Gerova and its Business

13.    The Court is respectfully referred to the *Declaration of Charles Thresh in Support*

*of Verified Petition and Related Relief Pursuant to 11 U.S.C. §§ 108, 1504, 1515, 1517, 1519,*

*1520, and 1521*(the "**Thresh Declaration**"), which sets forth the relevant facts in much greater

detail and are incorporated by reference herein.

14.    As with the Thresh Declaration, the Petitioners set forth the background below

based upon the sources indicated throughout.  Generally, the short duration of the JPLs'

appointment, and in particular the limited cooperation the JPLs have received from Gerova's

directors and officers, have impaired both the JPLs' investigation and the investigations of the

JPLs' staff into the affairs of the Company.  Therefore, except where indicated otherwise, the

factual narrative set forth below is almost exclusively based upon the pleadings filed in the

Bermuda Proceedings and other litigations that Gerova is a party to, filings with the SEC, and

other related documents the JPLs have reviewed. To date, the JPLs have not been able to review

7

all the books and records of Gerova, which, as detailed below, the JPLs believe are largely in the custody of one or persons or entities within this District or the wider United States.

15.     Per filings with the SEC, GFG was incorporated on March 22, 2007, pursuant to the laws of the Cayman Islands as "Asia Special Situations Acquisition Corporation".[5]  It was established as a "special purpose acquisition company" ("**SPAC**"), namely a company formed for the limited purpose of making acquisitions of business interests complying with prescribed criteria.

16.     Per an affidavit sworn in Bermuda Proceedings on May 10, 2012, by Jason Galanis, (the "**Galanis Affidavit**"), an insider of Gerova and CEO of Gerova Advisors LLC (an investment manager and subsidiary of the Company), the Company made an initial public offering on January 23, 2008 (the "**IPO**"), becoming a "foreign private issuer" (as such term is defined in Rule 3b-4 of the Securities Exchange Act of 1934, as amended) listed on the American Stock Exchange ("**AMEX**") in New York under the symbol "CIO".  Per the Galanis Affidavit, it was capitalized by its sponsors with $5.725 million, and through the IPO with $105 million by issuance of registered "units" comprising a warrant and share, both publicly traded on the AMEX.

17.     Following its initial formation, according to an affidavit sworn in the Bermuda Proceedings by GFG's chief operating officer (a position he held until the date of the JPLs' appointment), Eugene Scher, on December 6, 2011 (the "**Second Scher Affidavit**"), the Company changed its strategic plan. Accordingly, in 2009 the Company developed a new business plan described by Mr. Scher as "creative and unique", involving the acquisition of distressed hedge fund assets in exchange for its (listed) shares, which assets were to be

---

[5] The Company officially changed its name to Gerova Financial Group, Ltd. on or around January 19, 2010.

\\NY - 038380/000001 - 2407672 v8

contributed to newly-acquired insurance/reinsurance subsidiaries, giving the subsidiaries assets necessary for regulatory capital and surplus. A more complete description of this strategy can be found in the Form 20-F filed by GFG with SEC on June 1, 2010, attached hereto as <u>Exhibit E</u>.

18.     According to another affidavit sworn by Mr. Scher in the Bermuda Proceedings on November 9, 2011 (the "**First Scher Affidavit**"), the Company required the consent of 65% of its investors to pursue this new strategy and called a meeting of shareholders in the January of 2010 to vote on the new course. In the end, a 68% majority was achieved, almost-entirely through the Company funding the purchase of its own shares which were voted in accordance with the wishes of management.  Per the Galanis Affidavit, this led Gerova to erode almost 98% of its trust assets arising from the IPO, leaving only $2.6 million in its accounts.

19.     As part of the strategy, GFG redomesticated from the Cayman Islands into Bermuda where it was registered under the Act.  Gerova established its head office in Hamilton, Bermuda with the address: Cumberland House, 5th Floor, 1 Victoria Street, Hamilton, HM 11, Bermuda.[6]  In September of 2010, GFG transferred its stock listing to the New York Stock Exchange ("**NYSE**"), trading under the symbol "GFC".

20.     Based on the unaudited financial statement attached to the Second Scher Affidavit and other documents,  Gerova then began hiring employees and operating out of its Cumberland House headquarters. It signed a three (3) year lease for the Cumberland House space, leasing 2,375 square feet of office space on the building's fifth floor for a monthly rental of $12,270.85.

---

[6] Gerova filed papers with the SEC evidencing the change of official address and establishment of the Cumberland House headquarters. <u>See</u> SEC Form 6-K filed May 20, 2010 annexed hereto as <u>Exhibit F</u>.  Per SEC filings, Gerova officially registered as a Bermuda company under the Act completing its redomiciliation from the Cayman Islands on or around September 13, 2010, see <u>Exhibit G</u> annexed hereto (with such redomiciliation approved by Gerova's shareholders at an extraordinary general shareholders meeting held August 30, 2010).

As part of the Bermudian redomestication, GHL was incorporated at the direction of GFG on March 19, 2010, and GHL is the signatory to the Cumberland House lease.

**B.    Allied Provident Agreement**

21.    According to the Second Scher Affidavit and other filings in the Bermuda Proceedings, one of Gerova's actions to implement its new strategy was the acquisition of 81.5% of the outstanding shares of Amalphis Group, Inc. ("**Amalphis**"), a British Virgin Islands (BVI) Business Company, which is the holding company of Allied Provident, Inc. ("**API**"), an insurance and reinsurance provider licensed to operate in Barbados.  API's major customer is a US insurance carrier[7] that offers automotive insurance to high risk customers.

**C.    Stillwater Acquisition**

22.    Per the "Amended Petition" (as such term is defined below), in furtherance of the strategy described above of acquiring illiquid hedge fund assets in return for the Company's shares, Gerova identified a potential source of capital in the form of two groups of funds managed, respectively, by (a) Stillwater Capital Partners, Inc. and Stillwater Capital Partners, LLC (together, "**Stillwater**") on the one hand and (b) Weston Capital Management, LLC, ("**Weston**") on the other, each of which held apparently valuable but illiquid assets.

23.    As described in SEC filings, the Stillwater group comprised onshore and offshore funds.  Weston managed a group of master funds (called the "**Wimbledon Funds**") in a master-feeder structure. Gerova offered Stillwater and Wimbledon Funds investors restricted shares in GFG in exchange for underlying assets (the loan portfolios, and so on) held through the Stillwater and Wimbledon Funds.

---

[7] The insurance carrier is Drivers Insurance Company, a Georgia-based company.

24.    Per the Amended Petition, the restricted shares could not be converted to ordinary tradable shares, as registration of the shares was dependent upon, amongst other things, a clean audit opinion concerning the final net asset values.  After review of the Amended Petition, the Petitioners understand that a clean audit opinion proved impossible because, amongst other reasons, Stillwater's financials were internally inconsistent.  GFG's SEC filings apparently acknowledged that it incurred penalties to the Stillwater investors as a result of the delay in registration of their shares.  A wave of litigation against Stillwater and / or Gerova, and various directors and officers of these entities, ensued.[8]

25.    Apparently, after multiple lawsuits and other setbacks, Gerova's management eventually determined to return the assets acquired from Wimbledon and Stillwater in a series of full or partial unwindings of the acquisitions, as set forth in another affidavit filed by Mr. Scher on May 29, 2012 in the Bermuda Proceedings (the "**Third Scher Affidavit**"). While the Wimbledon Funds assets were allegedly at least partially returned to Weston, the return of the Stillwater assets appears not to have been performed per letters from Stillwater to its investors that the JPLs have reviewed.

26.    Pursuant to the above and set forth in the Third Scher Affidavit, Gerova then allegedly sought to "unwind or otherwise undo" the purchase of the Stillwater assets.  To this end, on 5 May 2011, the Company signed a Letter of Intent (the "**LOI**") with several (but not all) former Stillwater investors who were by this time shareholders of the Company.[9]

27.    It is the understanding of the JPLs that Gerova has not yet effected the transfers proposed by the LOI, but this is impossible to confirm without access to the Company's books

---

[8] See Exhibit C annexed hereto for a list that includes such litigation where Gerova was a named party.

[9] A copy of the LOI is annexed hereto as Exhibit H.

11

and records, a significant portion of which are believed to be in the possession and control of former managers of Gerova now affiliated with Stillwater and Weston.

**D.**   **Decline of Gerova**

28.    Between January 2011 and late February, shares in Gerova tumbled from $30 per share to less than $6.  This decline was in whole or part likely precipitated by the issuance, on January 10, 2011, of a report by analyst Dalrymple Finance LLC entitled "Gerova Financial Group (GFC): An NYSE-listed Shell Game" (the **Dalrymple Report**").  The Dalrymple Report alleged, amongst other things, that Gerova: (i) had a complete lack of financial disclosure, (ii) had impaired and overvalued assets, (iii) entered into undisclosed related-party transactions and affiliations indicative of self-dealing, and (iv) that certain members of management had reputations for financial malfeasance.  It concluded by stating that Gerova was "likely fraudulent" and "has many hallmarks of a classic fraud."[10]

29.    On February 24, 2011, the NYSE moved to suspend trading in GFG's shares. On April 19, 2011, Gerova commenced the process of voluntarily de-listing its shares by filing Form 25 with the SEC.

30.    In May of 2011, the landlord for Gerova's headquarters at Cumberland House in Hamilton terminated the lease, per a letter filed by the landlord in the Bermuda Proceedings, citing that Gerova had failed to pay rent since January, 2011.

31.    Pursuant to an internally-generated, unaudited balance sheet filed by the Company in the Bermuda Proceedings, as of May 29, 2012, Gerova had a reduction in assets of $714.5 million from eight months prior.

---

[10] The Dalrymple Report is annexed hereto as <u>Exhibit I</u>.

E.      **Pending Litigation**

32.      Based on their review of the Amended Petition, as well as the dockets in certain pending actions and filings therein, Petitioners are currently aware of the following pending actions (collectively, the "**Pending Litigation**"):[11]

A.      *In Re: Gerova Financial Group, Ltd., Securities Litigation*, **No. 11-md-2275 (S.D.N.Y.)**

33.      Pursuant to a transfer order dated November 6, 2011 and entered on November 7, 2011 [Dkt. 1], one action was transferred from the United States District Court for the Eastern District of New York,[12] and four actions pending in the United States District Court for the Southern District of New York[13] were consolidated for certain purposes before Judge Scheindlin under *In Re: Gerova Financial Group, Ltd.*, Securities Litigation, No. 11-md-2275 (S.D.N.Y.).

34.      The court entered a scheduling order on June 1, 2012, relating to all relevant actions (the "**Scheduling Order**").  The Scheduling Order set a discovery and briefing schedule for claims that survived the various motions to dismiss.  Pursuant to the Scheduling Order, discovery is currently underway.

---

[11]This list of Pending Litigation is not intended to be an exhaustive list and includes only those actions of which Petitioners are currently aware.  The definition of "Pending Litigation" shall also include (i) all other actions currently pending against Gerova of which Petitioners are not currently aware and (ii) all actions commenced against Gerova in the period between the date of this Motion and the Court's determination of same.

[12]*Goldberg v. Gerova Financial Group, Ltd.*, No. 11-cv-1385 (E.D.N.Y.).

[13]*In re Stillwater Capital Partners Inc. Litigation*, No. 11-2737 (S.D.N.Y.); *Arar v. Gerova Financial Group Ltd.*, No. 11-3081 (S.D.N.Y.); *Hafif v. Gerova Financial Group, Ltd.*, No. 11-3564 (S.D.N.Y.); *Bonner v. Gerova Financial Group Ltd.*, No. 11-3796 (S.D.N.Y.).

**B.    *In Re Stillwater Capital Partners Inc. Litigation*, No. 11-cv-2737 (S.D.N.Y.)
(the "Stillwater Action")**

35.    Plaintiffs brought a putative class action alleging violations of common and state
statutory law to recover damages on behalf of all investors in certain Stillwater funds whose
interests in the Stillwater funds were transferred in the transactions between Stillwater and GFG
consummated on January 20, 2010, and who either submitted a request for redemption and
allegedly have not been paid in full or who received GFG Series A Preferred Stock which
allegedly was converted into restricted, unregistered, shares in GFG.  Plaintiffs assert claims for
breach of fiduciary duties; aiding and abetting the breach of fiduciary duties; and breach of
contract [No. 11-cv-2737, Dkt. 50].

36.    Certain counts of the amended complaint filed in this case were dismissed
pursuant to an Opinion and Order entered on March 6, 2012 [No. 11-md-2275, Dkt. 25; No. 11-
cv-2737, Dkt. 101].  Claims alleging, *inter alia*, (a) breach of fiduciary duty by certain GFG
officers and directors for failing to register the restricted shares in GFG and (b) breach of
contract by GFG, survived the defendants' motions to dismiss.

37.    With regard to the surviving claims, a briefing and discovery schedule was set by
the Scheduling Order discussed above.  Pursuant to the Scheduling Order, discovery is currently
underway.

**C.    *Goldberg, et al. v. Gerova Financial Group Ltd. et al.*, No. 11-cv-7107
(S.D.N.Y.) (the "Goldberg Action")**

\\NY - 038380/000001 - 2407672 v8

38.     Plaintiffs brought a putative class action alleging both federal securities claims and state law claims on behalf of all persons who received or were promised common stock of GFG in exchange for their Stillwater interests, as defined in the amended complaint filed in this case [No. 11-cv-7107, Dkt. 99].  Plaintiffs assert claims for violation of Section 14(a) of the 1934 Securities Exchange Act (the "**1934 Act**"); violation of Section 10(b) of the 1934 Act and Rule 10(b)(5) promulgated thereunder; violation of Section 20(a) of the 1934 Act; breach of fiduciary duty of care; breach of fiduciary duty of loyalty; breach of fiduciary duty of candor; and aiding and abetting breaches of fiduciary duties.

39.     Certain Counts of the amended complaint filed in this case were dismissed pursuant to an Opinion and Order entered on April 3, 2012 [No. 11-md-2275, Dkt. 28; No. 11-cv-707, Dkt. 136].  However, certain claims against, *inter alios*, GFG survived the motions to dismiss.

40.     With regard to the surviving claims, a briefing and discovery schedule was set by the Scheduling Order discussed above.  Pursuant to the Scheduling Order, discovery is currently underway.

**D.     *Arar v. Gerova Financial Group Ltd., et al.,* No. 11-3081 (S.D.N.Y.) (the "Arar Action")**

41.     The amended class action complaint filed in the multidistrict action and the Arar Action [No. 11-md-2275, Dkt. 4; No. 11-cv-3081, Dkt. 51] alleges securities fraud claims on behalf of all persons who purchased or otherwise acquired GFG securities in open market transactions in the period from January 8, 2010 to February 23, 2011.  Plaintiffs assert claims for: violation of Section 10(b) of the 1934 Act and Rule 10(b)(5) promulgated thereunder; and violation of Section 20(a) of the 1934 Act.

\\NY - 038380/000001 - 2407672 v8

42.     In an Opinion and Order entered on April 23, 2012, the court denied GFG's motion to dismiss plaintiffs' Section 10(b) claims against the GFG defendants and Section 20(a) claims against the individual GFG defendants (with the exception of defendant Bianco).  [No. 11-md-2275, Dkt. 33; No. 11-cv-3081, Dkt. 75].

43.     With regard to the surviving claims, a briefing and discovery schedule was set by the Scheduling Order discussed above.  Pursuant to the Scheduling Order, discovery is currently underway.

**E.     *Eden Rock Financing Fund, L.P., individually and derivatively on behalf of Gerova Financial Group Ltd., et al. v. Gerova Financial Group Ltd., et al.*, No. 650613/2011 (N.Y. Sup. Ct.)**

44.     Plaintiffs, investors in certain Stillwater funds, brought this state court action in relation to defendants' alleged failure to pay redemptions purportedly due to plaintiffs.  Plaintiffs assert claims for: fraudulent conveyance; fraud; state statutory claims; breach of contract; and breach of fiduciary duty. [Dkt. 1].

45.     Pursuant to an order entered on December 22, 2011, defendants' motions to dismiss were granted as to the state statutory claims and the fraud claim against Gerova Asset Backed Holdings, L.P., but were otherwise denied.  From the case docket it appears that discovery is underway with regard to the surviving claims.

**F.     *Gindi v. Rudy, et al.*, No. 115577/2009 (N.Y. Sup. Ct.)**

46.     Plaintiff brought a state court action against, *inter alios*, GFG, in relation to a plan to develop condominiums at 476 Broome Street, New York.  Defendants filed motions to dismiss the amended complaint filed in this case on December 21, 2011, and plaintiff opposed the motions on February 29, 2012.

\\NY - 038380/000001 - 2407672 v8

47.     Pursuant to a So Ordered Stipulation entered on June 25, 2012 [Dkt. 155], the parties stated that they "have reached an agreement to compromise this matter and are in the process of finalizing the necessary documents."  The Stipulation also set a deadline of July 27, 2012 for the filing of reply papers in support of defendants' motion to dismiss.  That deadline passed without the filing of reply papers.  The case has not been closed on the court's docket.

**G.     _Seal v. Gerova Financial Group, Ltd._, Summons Action No. 49D11 11 04 CC 014674 in the Superior Court of Marion County, Indiana.  Commenced April 14, 2011**

48.     As described in Amended Petition, Eric Seal filed an action against GFG in the Superior Court of Marion County, Indiana, on April 14, 2011.  Mr. Seal alleged that GFG failed to pay sums due to him in relation to financial consulting services provided to GFG.  Default judgment was entered against GFG on June 29, 2011 in the sum of $68,385.47 plus attorney fees of $22,795.16.  GFG's motion to vacate the default judgment was granted on December 19, 2011.  GFG moved to dismiss the action on jurisdictional grounds on January 9, 2012.

49.     According to the Amended Petition, Mr. Seal assigned his rights in respect of the default judgment and the unpaid sums purportedly due to him to Aramid Entertainment Fund, Ltd. ("**Aramid**"), pursuant to a Claim Purchase Agreement and Assignment executed on October 7, 2011.

**H.     _Hensley v. Gerova Financial Group, Ltd_. No. 11-cv-0100 (W.D. NC)**

50.     Lou Hensley, formerly the President and CEO of Gerova Holding Ltd., filed an action seeking specific performance of an employment agreement between GFG and Mr. Hensley and seeking damages in relation to the alleged breach of the employment agreement.  Mr. Hensley alleges that lawsuits are pending against him in relation to his employment by GFG.

He seeks indemnity from GFG for the resulting costs, and an order requiring GFG to notify its insurance carriers of the pending lawsuits. GFG filed an answer to the complaint filed in this case on September 26, 2011, asserting certain counterclaims against Mr. Hensley on the theory that he was to blame for GFG's failure to complete certain acquisitions and to obtain financing. [Dkt. 15]. Mr. Hensley filed an answer to the counterclaims on October 11, 2011. [Dkt. 16]. From review of the docket, it appears that discovery is ongoing, and trial is scheduled to begin on January 1, 2013.

I.    *Marseilles Capital, LLC v. Gerova Financial Group, Ltd.*, No. 10-cv-81294 (S.D. Fla.)

51.    As described in the Amended Petition, Marseilles Capital LLC ("**Marseilles**") filed suit against GFG in the United States District Court for the Southern District of Florida, alleging breach of contract in relation to GFG's purported failure to pay sums due under a share repurchase agreement between Marseilles and GFG.

52.    The court issued an Order granting summary judgment in favor of Marseilles on May 12, 2011. As described in the Amended Petition, Marseilles filed certain motions for writs of garnishment.

53.    According to the Amended Petition, on or around December 6, 2011, Marseilles assigned, for consideration, the whole benefit of the debt owed to Marseilles by GFG to CAC Group, Inc., an entity reportedly under the control of members or insiders of Gerova's former management group.

J.    *Manley v. Gerova Financial Group, Ltd.*, No. 10-cv-81500 (S.D. Fla.)

54.    As summarized in the Amended Petition, two partial judgments (for $716,092.58 and $3,340,816.09, respectively) were awarded against GFG in an action brought by Mr.

18

Marshall Manley, the former CEO and Chairman of the Board of Directors of GFG, in relation to a separation agreement and release between Mr. Manley and GFG. [Dkt. 45; Dkt. 52].

55.     According to the Amended Petition, the debts due to Mr. Manley were assigned to CAC Group, Inc., and remain unpaid.

## F.     Events Leading to the Bermuda Proceedings and the Appointment of Joint Provisional Liquidators

56.     On October 7, 2011, three outside creditors of Gerova petitioned the Bermuda Court to commence winding-up proceedings for GFG and for the appointment of provisional liquidators of GFG, commencing the Bermuda Proceedings.[14]   On February 2, 2012, over Gerova's objections, Maxim Group LLC ("**Maxim**"), which was owed a sum of $2.25 million pursuant to a note issued by Gerova in February of 2010 (the "**Note**"),[15] moved to substitute itself as the petitioner in the Bermuda Proceedings, with such substitution approved by an order of the Bermuda Court dated March 19, 2012.[16]

57.     Maxim filed an amended winding-up petition for GFG (the "**Amended Petition**") on April 10, 2012, arguing that GFG should be liquidated pursuant to Bermuda law.   The Bermuda Court held a hearing on the Amended Petition on June 21, 2012.   In an order dated July 6, 2012, (the "**July 6 Order**"), the Bermuda Court found that Maxim had the right to seek a winding-up order for GFG *ex debito justitiae* as an unpaid creditor with a presently due debt.[17]

---

[14]   For a detailed description of a "winding-up proceeding" under Bermuda law, and how it is both similar to and different from the Bankruptcy Code,  we respectfully refer the Court to the *Mayor Declaration* (as such term is defined below), filed with the Court contemporaneously herewith.

[15]   Maxim has served as underwriter for Gerova's IPO, and the Note was issued by Gerova as part of a settlement between it and Maxim related to Maxim's deferred underwriting compensation.  The Note is annexed hereto as Exhibit J.

[16]   A copy of this order is annexed hereto as Exhibit K.

[17]   The July 6 Order is annexed hereto as Exhibit L.  The Bermuda Court declined to rule on the solvency of Gerova and the lack of substratum, citing, respectively, the lack of sufficient independent expert evidence and the (footnote continued)

The July 6 Order gave Gerova until July 13, 2012 to pay Maxim the entire value of the Note. Gerova failed to make this payment.  Accordingly, on July 20, 2012, the Bermuda Court issued the Winding-Up Order, which ordered the liquidation of GFG and appointed the Petitioners as the JPLs.

58.     On August 15, 2012, the Petitioners filed a petition for winding-up GHL. Pursuant to that petition, the Bermuda Court issued the Order Appointing Joint Provisional Liquidators, appointing the Petitioners as JPLs for GHL on August 20, 2012.

59.     The Liquidation Orders authorize the Petitioners to, amongst other things, commence a proceeding in the United States seeking recognition of the Bermuda Proceedings as foreign main proceedings and requesting related relief under Chapter 15.  Each of the exhibits hereto, the Thresh Declaration and exhibits thereto, the Mayor Declaration and exhibits thereto, and the Memorandum of Law are incorporated by reference as if fully set forth herein.

## RELIEF REQUESTED AND BASIS THEREOF

60.     Petitioners, as duly authorized foreign representatives of Gerova, seek recognition of the Bermuda Proceedings as foreign main proceedings, (or, alternatively, as foreign non-main proceedings), pursuant to sections 1504, 1509, 1515 and 1517, and seek relief as of right under section 1520 and certain further relief available under section 1521.

61.     Specifically, Petitioners seek entry of an order, substantially in the form attached hereto as Exhibit M (the "**Proposed Order**") granting the following relief as necessary to best advance the winding-up of Gerova in the Bermuda Proceedings:

---

inappropriateness of creditors raising substratum complaints.  As the Bermuda Court stated in the July 6 Order, "[T]he failure to pay Maxim's debt will itself provide the requisite proof of insolvency." (Jul. 6 Order, 20).

\\NY - 038380/000001 - 2407672 v8

(a)    Recognition of the Bermuda Proceedings as a foreign main proceeding as defined in section 1502(4);

(b)    Granting relief as of right upon recognition of a foreign main proceeding pursuant to section 1520;

(c)    Granting additional relief as authorized by section 1521, including, without limitation:

(i) staying the commencement or continuation of any action or proceeding concerning the assets, rights, obligations or liabilities of Gerova, to the extent not stayed under section 1520(a);

(ii) staying execution against the assets of Gerova to the extent not stayed under section 1520(a);

(iii) authorizing Petitioners to issue subpoenas and conduct examinations of witnesses, take evidence, seek production of documents, and deliver information concerning the assets, affairs, rights, obligations or liabilities of Gerova for the purposes of locating and analyzing Gerova's assets and liabilities, and obtaining recovery of Gerova's books and records;

(iv) entrusting the Petitioners with the administration and realization of all of Gerova's assets that are located within the territorial jurisdiction of the United States, including, without limitation, any and all claims and causes of action belonging to Gerova;

(v)  providing that section 365 of the Bankruptcy Code is applicable to this Chapter 15 case and specifically granting the Petitioners, in their capacity as Gerova's Foreign Representative, the relief afforded under section 365(a);

\\NY - 038380/000001 - 2407672 v8

(d)      explicitly acknowledging that the extensions of time found in section 108

apply to the Petitioners in their capacity as Gerova's Foreign Representative;

(e)      otherwise giving full force and effect to the Bermuda Proceedings; and

(f)      awarding Petitioners such other and further relief as this Court may deem

just and proper.

## A.      The Petitioners Have Satisfied the Requirements for Recognition

62.      As more fully described in the Memorandum of Law, the requirements for

recognition of a foreign proceeding are set forth in section 1517(a), which provides, in pertinent

part, that:

> after notice and hearing, an order recognizing a foreign proceeding
> shall be entered if -
>
> (1) such foreign proceeding for which recognition is sought is a
> foreign main proceeding or foreign non-main proceeding within
> the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person
> or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).  As set forth below and in greater detail in the Memorandum of Law, each

of the foregoing requirements for recognition has been satisfied.

63.      First, the Bermuda Proceedings are foreign proceedings under section 101(23).

The Bermuda Proceedings were commenced under and are being conducted in accordance with

the Act, which includes oversight by the Bermuda Court and administration of the estate by the

Petitioners as provisional liquidators.  A Bermuda liquidation proceeding is collective in nature

pursuant to the provisions of the Act which requires, in part, that the JPLs obtain and protect

Gerova's property, settle claims against the company or its property, and distribute any value

realized from such property to creditors and, in the event of a surplus, to shareholders.

22

Moreover, the Act is the body of Bermudian law that governs the insolvency of companies in Bermuda, a British territory, with oversight of the Bermuda Court, as the court generally responsible for the resolution of insolvency cases in Bermuda.

64.    Moreover, the Bermuda Proceedings are foreign main proceedings as defined in section 1502(4) because Gerova's center of main interests lies in Bermuda in that: (i) Gerova's registered office has, since 2010, been located in Hamilton, Bermuda and Gerova is registered at the Bermuda Register of Companies in accordance with the Act; (ii) Gerova was and is headquartered in Bermuda because it maintained its head office in Hamilton, where it leased space and hired employees, it listed its head office in Hamilton as its principle executive office on its filings with the SEC, it has had no other office since the establishment of the Hamilton headquarters, its registered office remains in Bermuda, and the Petitioners are indisputably headquartered in Bermuda; (iii) Gerova conducted business through its Bermuda headquarters, including the purchase and management of its assets and its ultimately-incomplete efforts to write policies in the insurance and reinsurance markets; (iv) the situs of Gerova's assets, the bulk of which consist of contractual rights, ownership interests in certain companies and limited partnerships, and complex financial products, is properly viewed as being located at Gerova's registered office in Bermuda; (v) since their appointment on July 20, 2012, the Petitioners, in their capacity as court appointed officers, have directed the administration and management of Gerova from Bermuda, negotiated with other parties in litigation to which Gerova is a party, maintained (to the extent possible) Gerova's known books and records in Bermuda, and operated Gerova in Bermuda; and (vi) Maxim, the petitioning creditor who commenced the winding-up proceeding for GFG, while itself located in New York, has identified Bermuda as the appropriate forum to address its claims, and other creditors of Gerova have not contested the appropriateness

\\NY - 038380/000001 - 2407672 v8

of the Bermuda forum.    Accordingly, the Bermuda Proceedings satisfy the requirements of section 1517(a)(1).

65.    Second, the Petitioners are "foreign representatives" within the meaning of section 101(24).    Specifically, the Petitioners are individuals who have been appointed by the Bermuda Court and are duly authorized to act as the JPLs of Gerova.

66.    Upon appointment, a liquidator under Bermudian law is, among other things, granted the powers previously held by the directors of the subject company, including (i) bringing or defending legal proceedings in the name of the company, (ii) carrying on the business of the company so far as may be necessary for the beneficial winding-up, (iii) compromising with creditors, and (iv) selling the real and personal property of the company. Here, and as more fully set forth in the Memorandum of Law, the Thresh Declaration and the *Declaration of Robin Mayor* (the "**Mayor Declaration**"), each filed contemporaneously herewith, the Petitioners are the sole persons that have the authority and power to act in the name of Gerova.    The Petitioners have, thus, been directing the operations and maintaining the estate of Gerova in Bermuda since Liquidation Orders were entered.    Accordingly, the Petitioners satisfy the requirements of section 1517(a)(2).

67.    The following documents are annexed hereto in support of this Verified Petition, as required by section 1515 and Rules 1007 and 1008 of the Bankruptcy Rules:

(a)    Pursuant to section 1515(b), a certified copy of the Liquidation Orders of the Bermuda Court appointing the Petitioners as provisional liquidators for Gerova is annexed as Exhibit A.

24

(b)    Pursuant to 11 U.S.C. § 1515(c), a statement certifying, among other things, that no other foreign proceedings with respect to Gerova are known to the Petitioners, is annexed as <u>Exhibit B</u>.

(c)    Pursuant to Bankruptcy Rule 1007(a)(4), annexed hereto as <u>Exhibit C</u> is:

(i) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1;

(ii) a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of Gerova;

(iii) a list of all known parties to litigation and/or arbitration pending in the United States in which Gerova is a party at the time of the filing of the petition; and

(iv) a list of all entities against whom provisional relief is begin sought section 1519.

(e)    Pursuant to 28 U.S.C. § 1746, a verification by the Petitioners regarding this Verified Petition is annexed as part of <u>Exhibit D</u>.

As such, this Verified Petition satisfies the requirements of sections 1515 and 1517 of the Bankruptcy Code.

68.    Because the Bermuda Proceedings are foreign proceedings under section 101(23), because Gerova's center of main interests lies in Bermuda, because the Petitioners are foreign representatives under 11 U.S.C. § 101(24), because the Petitioners have complied with all requirements of 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Bankruptcy Rules, and because recognition of the Bermuda Proceedings would not be contrary to United States public policy under 11 U.S.C. § 1506, Petitioners are entitled to entry of an order recognizing the Bermuda Proceedings as foreign main proceedings.[18]

---

[18] As discussed in the *Memorandum of Law*, this Court and other courts have recently recognized multiple Bermuda liquidations as foreign main proceedings worthy of the protections and relief afforded by Chapter 15.

69.     Alternatively, in the event the Court determines that the Bermuda Proceedings are not eligible to be recognized as foreign main proceedings as Petitioners believe it should be, the Bermuda Proceedings should be recognized as foreign non-main proceedings, as defined in 11 U.S.C. § 1502(5), because, as set forth above, Gerova, at a minimum, maintains an establishment in Bermuda where non-transitory economic activity takes place.

**B.     There is a Need for Recognition of the Bermuda Proceedings to Protect Gerova's Assets for the Benefit of All Creditors**

70.     The Bermuda Proceedings provide for a centralized process to assert and resolve claims against Gerova's estate, and to make distributions to Gerova's creditors.   Relief and recognition are requested to protect Gerova's assets and maintain, as well as maximize, value for Gerova's creditors.   Specifically, Gerova's assets consist of complex financial products and ownership stakes in various illiquid securities, along with its shares in Amalphis.   Central administration of these assets is critical to any meaningful realization of their value.

71.     The Petitioners believe, based on their own limited investigation to-date and the affidavits and related documents filed in the Bermuda Proceedings, that Gerova's prior management had apparent conflicts of interest and that such management may have sacrificed the value of Gerova's assets to benefit other entities affiliated with the former management group.   While the Petitioners have not yet had the time or resources to gather conclusive evidence, there are numerous allegations from a variety of sources which indicate that Gerova's former management and insiders engaged in self-dealing transactions with little or no economic purpose other than to enrich those individuals to the detriment of Gerova and its creditors.

72.     During the limited duration of their tenure, the Petitioners have discovered that former management removed most of Gerova's books and records sometime around Gerova's eviction from the Cumberland House headquarters in the spring of 2011.   Upon information and

26

belief, the majority of the books and records of the Company, as well as many members of the former management group and their insiders, are located in New York and in other parts of the United States. For the Petitioners to effectively administer Gerova and its assets, the Petitioners require access to these books and records as well as these individuals.

73.    The Bermuda Proceedings and the relief requested herein will protect Gerova's assets from the actions of Gerova's former management and their insiders, creditors and other third party claims, and will (a) provide the Petitioners with access to information necessary to assemble the assets and claims of Gerova for administration, (b) enforce and protect Gerova's rights against third parties with respect to such assets, and (c) maximize the value of Gerova's assets for the benefit of Gerova's creditors.

74.    Thus, the Petitioners now seek recognition of the Bermuda Proceedings as foreign main proceedings in order to garner and administer the assets of Gerova which may be located and held in the United States for the benefit of all of Gerova's creditors, and to enjoin certain actions of third-parties, including Gerova's former management, insiders, and affiliates, creditors and other third parties against Gerova and its assets.

75.    Specifically, but without limiting the generality of the foregoing, and given the significant and immediate risk that Gerova's former management and insiders may have taken, or will take, action with respect to the assets, the Petitioners seek specific recognition of their exclusive authority to control, manage, use and administer Gerova's assets under the Bermuda Proceedings. The Petitioners also seek relief so that they may take discovery in order to ensure identification of all of Gerova's assets and efficiently administer Gerova's assets in one proceeding (i.e., the Bermuda Proceedings) and thereby prevent a piecemeal disposition or

degradation of assets that would undermine the Bermuda Proceedings and harm Gerova and its creditors.

76.    Accordingly, recognition of the Bermuda Proceedings as foreign main proceedings under Chapter 15 will assist the orderly winding-up of Gerova under the supervision of the Bermuda Court and is demonstrably consistent with United States public policy.  By granting recognition of the Bermuda Proceedings, granting injunctive relief and providing Petitioners with access to Gerova's books and records and other information, this Court would in effect be cooperating with the Bermuda Court in the liquidation of Gerova, promoting fair and efficient administration of the Bermuda Proceedings and ensuring the maximum realization of the value of Gerova's assets for the benefit of all creditors.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

\\NY - 038380/000001 - 2407672 v8

## CONCLUSION

WHEREFORE, Petitioners respectfully request that this Court enter an Order, substantially in the form attached hereto as Exhibit M, recognizing the Bermuda Proceedings as foreign main proceedings and granting the relief requested herein, as well as any further relief that may be just and proper.

<div style="margin-left: 40%;">Respectfully submitted,</div>

Dated:    August 24, 2012
      New York, New York

<div style="margin-left: 40%;">

HOGAN LOVELLS US LLP

By:  /s/  Peter A. Ivanick
    Peter A. Ivanick
    Robin E. Keller
    Scott W. Reynolds
    875 Third Avenue
    New York, New York 10022
    Telephone: (212) 918-3000
    Facsimile: (212) 918-3100

*Attorneys for the Petitioners*

</div>

\\NY - 038380/000001 - 2407672 v8