UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:

GEROVA FINANCIAL GROUP, LTD., *et. al.*

          Companies in a Foreign Proceeding.

-----------------------------------------------------------------x

Chapter 15

Case No.12-13641(ALG)

(Jointly Administered)

## MEMORANDUM OF OPINION

A P P E A R A N C E S:

HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
 By: Peter A. Ivanick, Esq.
     Robin E. Keller, Esq.
     Scott W. Reynolds, Esq.
*Attorneys for the Petitioners*

OLSHAN FROME WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
 By: Michael S. Fox, Esq.
     Jordanna L. Nadritch, Esq.

   --and--

SULMEYER KUPETZ, APC
333 South Hope Street, 35th Floor
Los Angeles, California 90071
 By: Victor A. Sahn, Esq.
     Steven F. Werth, Esq.
*Attorneys for CAC Group, Inc., Greybox LLC*
*and Gion Funding Settlements. Inc.*

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

1

Before the Court are chapter 15 petitions filed by the joint liquidators (the "Liquidators") of Gerova Financial Group, Ltd. ("GFG") and Gerova Holdings Ltd. ("GHL", and together with GFG, "Gerova"), debtors in foreign proceedings pending before the Supreme Court of Bermuda (the "Bermuda Proceedings"). The Liquidators seek recognition of the Bermuda Proceedings as foreign main proceedings under 11 U.S.C. § 1517 principally to obtain discovery relating to Gerova's financial affairs and to recover on any claims against or any assets of Gerova that are located within the territorial jurisdiction of the United States. *See Verified Petition of Foreign Representatives* at ¶¶ 61 (c)(iii)-(iv), Dkt. No. 2 ("Petition"). Recognition is opposed by three of Gerova's creditors, CAC Group, Inc., Gion Funding Settlements, Inc. and Greybox Funding Settlements, Inc. (collectively, the "Objectors"). For the foregoing reasons, the Liquidators' request for recognition of the Bermuda Proceedings is granted.

## Background

The facts as summarized below are based on the record and were substantially undisputed.[1]

Gerova was an investment company that was originally formed to invest in Asian assets. After none of its potential acquisitions in Asia was completed, the company pursued a different business plan involving the acquisition of illiquid hedge fund assets, which it planned to use as capital for insurance regulatory purposes. At the time of its liquidation, Gerova may have held three principal groups of assets: (1) an 81% interest in an entity called Amalphis Group, Inc., which owns an insurance company in Barbados called Allied Provident, Inc.; (2) interests in (i) loans that financed the purchase of life insurance policies, (ii) real estate, and (iii) working capital for U.S. law firms representing plaintiffs in personal injury suits, all acquired from

---

[1] In support of their petition, the Liquidators rely principally on the Supplemental Declaration of Charles Thresh as Foreign Representative ("Supp. Decl."), Dkt. No. 26, admitted into evidence at the hearing held on July 27, 2011.

Stillwater Capital Partners; and (3) interests in a group of investment funds called Wimbledon, managed by Weston Capital Management, LLC.[2]  Declaration of Charles Thresh in Support of Verified Petition ("Thresh Declaration"), Dkt. No. 4, at ¶ 16-22; Transcript of Hearing Held on September 24, 2012 ("Hearing Transcript"), Dkt. No. 28 at 33:8 - 35:13.

Both the Gerova entities were registered as limited liability companies in Bermuda pursuant to the Bermuda Companies Act 1981, their registered offices were located in Hamilton, Bermuda, and they had at least one full-time employee in office space rented in Bermuda (the "Cumberland House Office").  *Supp. Decl.*, at ¶ 5, 7.  Gerova's directors held at least some board meetings in Bermuda and at least one of Gerova's board members was Bermuda-based.  *Id.* at ¶¶ 6-7.  Gerova's corporate books and records were maintained in Bermuda and are now in the possession of the Liquidators in Bermuda.  *Id.* at ¶ 8.  Gerova also maintained bank accounts in Bermuda at least until May 2011 at HSBC Bank Bermuda Limited.  *Id.* at ¶ 10.

When Gerova prepared to issue a private placement of securities, it did so subject to the regulatory authority of the Bermuda Monetary Authority.  *Id.* at ¶ 12.  Gerova's Bermuda address was listed on various filings with the U.S. Securities and Exchange Commission.  *Id.* at ¶ 11.  After a U.S. securities analyst published a report claiming that Gerova was in effect a "Ponzi scheme," the funds were sued in several securities suits in the United States.[3]  The plaintiffs in the various lawsuits specified Gerova's address to be that of the Cumberland House Office and served or tried to serve Gerova with process at that address or at its registered office in Bermuda.  *Id.* at ¶ 13.   Gerova may have had significant assets in the United States (the Stillwater and Wimbledon assets); however, it also had significant assets outside the United States, and its

---

[2] Gerova's acquisition of the second and third asset groups may have been unwound prior to Gerova's liquidation.

[3] The Court does not adopt these allegations, but only presents them for background.

3

principal remaining asset may be its interest in an insurance company located in Barbados, Allied Provident. *See* Hearing Transcript, at 33:8 - 35:13.

Gerova ceased all business by May 2011. Hearing Transcript, at 37:15-18. A few months later, on October 7, 2011, three creditors petitioned the Supreme Court of Bermuda ("the Bermuda Court") to commence winding-up proceedings for GFG and applied for the appointment of liquidators. Thresh Declaration, at ¶ 42. The Bermuda Court adjourned the winding-up proceedings at GFG's request, as GFG asserted that the debts of the petitioning creditors were disputed.[4] *Id.* at ¶ 43. As is evidently permissible under Bermuda law, GFG managed to settle the claims of two of the petitioning creditors and successfully disputed the claim of the third. *Id.* However, Maxim Group LLC, another creditor owed $2.25 million, moved to substitute itself as petitioner in GFG's liquidation proceedings. *Id.* at ¶ 44. On March 19, 2012, the Bermuda Court approved Maxim's substitution over GFG's objection, and Maxim subsequently filed an amended winding-up petition for GFG. *Id.* at ¶¶ 44-45. In an order dated July 6, 2012 (the "July 6 Order"), the Bermuda Court found that Maxim had the right to seek a winding-up order for GFG as an unpaid creditor with a presently due debt. *Id.* at ¶¶ 44-45. The Bermuda Court declined to stay or dismiss the Amended Petition, despite GFG's request that it do so in light of GFG's counterclaims against Maxim, which the Bermuda Court found "dubious." *Id.* at ¶ 46. At GFG's request, however, the Court gave GFG the opportunity to avoid the appointment of liquidators by paying Maxim's debt in full. *Id.* at ¶ 47. When GFG failed to make this payment, the Bermuda Court on July 20, 2012 issued an order winding up GFG and

---

[4] Under Bermuda insolvency law, "the Court shall not give a hearing to a winding up petition presented by a contingent or prospective creditor until such security for costs has been given as the Court thinks reasonable and until a prima facie case for winding up has been established to the satisfaction of the Court. . . ." Bermuda Companies Act 1981, § 163(1)(c).

4

appointing the petitioners as Liquidators (the "July 20 Order"). *Id.* On August 15, 2012, the Liquidators filed a petition for winding up GHL and on August 20, 2012, the Bermuda Court entered an order granting such relief and appointing the petitioners as liquidators of GHL (the "August 20 Order"). *Id.* at ¶¶ 47-49.[5] An appeal by Gerova of the July 6th Order is currently pending in Bermuda. *Id.* at ¶ 48.

The July 20 and August 20 Orders of the Bermuda Court empower Gerova's Liquidators, among other things, (a) to ascertain the assets of Gerova and take all steps necessary to secure them wherever they may be situated, and (b) where necessary and/or appropriate, to seek recognition by and the assistance of courts in the United States and elsewhere. *Id.* at ¶ 51(a)-(b). The Liquidators filed the instant chapter 15 petition on August 24, 2012, seeking recognition of the Bermuda Proceedings as foreign main proceedings or, in the alternative, as foreign nonmain proceedings under 11 U.S.C. § 1517. The Objectors opposed recognition as to foreign main status – though not as to foreign nonmain status – on the following principal grounds: (1) the relief is, in their view, "unnecessary" – opposed by a significant percentage of Gerova's creditors and not merited from a cost-benefit perspective, and (2) the order commencing the Bermuda Proceeding is subject to appeal. It is asserted that these and other aspects of the Bermuda Proceedings make its recognition "manifestly contrary to the public policy of the United States" under 11 U.S.C. § 1506.

A hearing regarding recognition was held on September 24, 2012. At the conclusion of the hearing, the Court issued an oral ruling granting the petition for recognition of the Bermuda Proceedings as foreign main proceedings and stated that this written decision would follow. An order was entered on October 11, 2012. Dkt. No. 29.

---

[5] The Judge in Bermuda was its new chief justice, appointed in 2012, Ian Kawaley, an eminent authority on cross-border insolvency issues and co-editor of *Cross-Frontier Insolvency of Insurance Companies* (2001), as well as co-author of *Cross-Border Judicial Cooperation in Offhsore Litigation* (2009).

**Discussion**

Chapter 15 of the Bankruptcy Code governs the recognition by U.S. courts of foreign proceedings. Section 101(23) of the Bankruptcy Code defines a foreign proceeding as "a collective judicial or administrative proceeding in a foreign country . . . under a law relating to insolvency . . . in which . . . the assets and affairs of the debtor are subject to control or supervision by a foreign court for the purpose of reorganization or liquidation." 11 U.S.C. §101(23). Section 1517(b) provides that a foreign proceeding "shall be recognized" as a "foreign main proceeding" if "it is pending in the country where the debtor has the center of its main interests;" or as a "foreign nonmain proceeding" if "the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending." 11 U.S.C. § 1517(b).[6] It is the petitioner's burden to establish by a preponderance of the evidence that the debtor's center of main interests ("COMI") is the location of the foreign proceedings or, in the alternative, that the debtor has an establishment in that place. *In re Fairfield Sentry Ltd.,* No. 10 Civ. 7311(GBD), 2011 U.S. Dist. LEXIS 105770, at *9 (S.D.N.Y. Sept. 15, 2011), affirming 440 B.R. 60 (Bankr. S.D.N.Y. 2010); *In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.,* 389 B.R. 325, 335 (S.D.N.Y. 2008), affirming 374 B.R. 122 (Bankr. S.D.N.Y. 2007).

Gerova's COMI

Although chapter 15 does not define the term COMI, § 1516 of the Bankruptcy Code establishes a presumption that a corporate debtor's COMI is its registered office "[i]n the absence of evidence to the contrary." 11 U.S.C. § 1516(c). Where evidence is presented to the

---

[6] Section 1502(2) of the Bankruptcy Code defines "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity."

contrary, the court cannot rely solely upon the presumption but rather must consider all of the relevant facts. *Fairfield Sentry,* 2011 U.S. Dist. LEXIS 105770, at *9. Courts have considered a number of factors in determining the COMI of a foreign debtor, including: "'the location of the debtor's headquarters; the location of those who actually manage the debtor (which conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.'" *In re Millennium Global Emerging Credit Master Fund Ltd.*, 474 B.R. 88, 92 (S.D.N.Y. 2012), affirming 458 B.R. 63 (Bankr. S.D.N.Y. 2011), quoting *In re SPhinX,* 351 B.R. 103, 117 (Bankr. S.D.N.Y.2006), *aff'd* 371 B.R. 10 (S.D.N.Y. 2007).

    In this case, there is no dispute that the Bermuda Proceedings are foreign proceedings within the meaning of the Bankruptcy Code, that the Liquidators are foreign representatives, and that Gerova had an establishment in Bermuda sufficient for foreign nonmain recognition. The only question under § 1517 is whether Bermuda is or was Gerova's COMI for purposes of foreign main recognition. At the time of the filing of the Bermuda Proceedings, Bermuda was the situs of Gerova's registered office, which creates a rebuttable presumption that Bermuda is Gerova's COMI in the absence of evidence to the contrary. 11 U.S.C. § 1516(c). There is virtually no evidence of record "to the contrary." Bermuda is or was the location of Gerova's only known physical office, the location of its only known employee, the place of at least some of its board members and meetings, the location of its corporate books and records, and the place where litigation adversaries served or attempted to serve process. GFC's Form 6-K dated May 20, 2010 stated that its principal executive offices were located c/o GHC at Cumberland House, Hamilton, Bermuda and stated that it had "established new headquarters for its insurance

operations in Hamilton, Bermuda. The new offices are the global headquarters for GEROVA Holdings, Ltd., and for its insurance subsidiaries." Ex. F to Thresh Decl.

Investors in the U.S. and elsewhere were thus clearly informed that Gerova's principal situs was in Bermuda and on this record Bermuda was the only jurisdiction reasonably "ascertainable to third parties," an important factor in the COMI determination. *See Millennium*, 458 B.R. at 77; *In re Betcorp Ltd.*, 400 B.R. 266, 291 (Bankr. D. Nev. 2009); *Bear Stearns*, 374 B.R. at 129; *In re Basis Yield Alpha Fund (Master),* 381 B.R. 37, 47 (Bankr. S.D.N.Y. 2008). Moreover, as stated in the press release attached to Gerova's 6-K, Bermuda has a "strong locally based insurance and reinsurance infrastructure, deep pool of local investment talent, excellent availability of cost effective third-party services providers, political and economic stability, and easy access from major East Coast U.S. cities." It also has a "sophisticated, fair and impartial legal system that has been recognized and granted comity by other courts." *Millennium*, 458 B.R. at 78-79; *see also In re Board of Directors of Hopewell Int'l Ins. Ltd.,* 275 B.R. 699 (S.D.N.Y. 2002), *aff'g* 238 B.R. 25 (Bankr. S.D.N.Y. 1999). In sum, there are more than sufficient facts to find that Bermuda is Gerova's COMI and that the Bermuda Proceedings should be recognized as foreign main proceedings.

As in many cases, it is relevant to consider the operative date for analyzing COMI – whether as of the date of the commencement of the Bermuda Proceedings or as of the chapter 15 petition date. There is a split of authority as to the relevant date. This Court previously held in *Millennium Global* that the appropriate date on which to determine COMI is the date the foreign proceeding commenced. 458 B.R. at 72-76.[7] This holding, in connection with the granting of recognition to the liquidators of two Bermuda funds, was based on the statutory language, as

---

[7] The District Court's decision on appeal, 474 B.R. 88, did not reach this issue in affirming the ruling below.

well as practice under the related European Insolvency Regulation from which the term "center of main interests" is derived.[8]  *Id.  Millennium*'s construction linking the COMI analysis to the commencement of the foreign proceeding has apparently been endorsed by the UNCITRAL Working Group which is drafting amendments to the Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency, an authoritative guide to construction of the Model Law, which was the basis for Chapter 15.[9]  *See* UNCITRAL, *Report of Working Group V (Insolvency Law) on the work of its forty-first session* (New York, April 30-May 4, 2012), *available at* http:// http://daccess-ods.un.org/TMP/6637112.49828339.html at ¶ 60 (stating that a proposed change to the Model Law to clarify that the COMI determination be made as of the date of the commencement of the foreign insolvency proceeding "received wide support").[10]  Although prior cases have held that the COMI of an entity should be determined as of the date of

---

[8] The European Insolvency Regulation, which requires members of the European Union ("EU") to recognize insolvency proceedings commenced in other EU nations, was the first major legislation to employ the term COMI.  *Millennium Global*, 458 B.R. at 77; *see* European Insolvency Regulation, Council Reg. (EC) No. 1346/2000 of 29 May 2000 at Art. 3, ¶ 1 ("The courts of the Member State within the territory of which the centre of a debtor's main interests is situated shall have jurisdiction to open insolvency proceedings.").

[9] *See In re Tri–Continental Exchange Ltd.,* 349 B.R. 627, 633 (Bankr. E.D. Cal. 2006), quoting Jay Lawrence Westbrook, *Chapter 15 at Last,* 79 Am. Bankr. L.J. 713, 719–20 (2005) ("Chapter 15 was drafted to follow the Model Law as closely as possible, with the idea of encouraging other countries to do the same.  One example is use of the phrase 'center of main interests,' which could have been replaced by 'principal place of business' as a phrase more familiar to American judges and lawyers. The drafters of Chapter 15 believed, however, that such a crucial jurisdictional test should be uniform."); *see also* 11 U.S.C. § 1508 (instructing that in interpreting chapter 15, ''the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions").

[10] The report of the Working Group is U.N. Doc. A/CN.9/742 dated 8 May 2012.  It refers to ¶ 128C of the Working Paper, U.N. Doc. A/CN.9/WG.V/WP.107 (available at http://daccess-dds-ny.un.org/doc/UNDOC/LTD/V12/558/97/PDF/V1255897.pdf?OpenElement), which states that use of the date of the commencement of the foreign proceeding is consistent with the evidence required to apply for recognition and the "relevance accorded the decision commencing the foreign proceeding and appointing the foreign representative."  The recommendations of the Working Group have not yet been adopted by UNCITRAL, however.

the filing of the chapter 15 petition, based on the use of the present tense in § 1502(4),[11] such a construction would not lead to a different result in the instant case. Even if one ignores Gerova's business activities and connections in Bermuda before the filing of the Bermuda Proceedings in October 2011, the only activities of Gerova as of the chapter 15 petition date were the activities of the Liquidators winding up Gerova in Bermuda.

<u>Chapter 15 Relief as "Unnecessary" and Contrary to U.S. Public Policy</u>

In opposing foreign main recognition, the Objectors' principal contention is that recognition is "manifestly contrary to the public policy of the United States" within the meaning of § 1506 because recognition is "unnecessary" at this time and because it has been sought by one creditor only and entails needless expense in contravention of the wishes of "most of" Gerova's creditors.[12] The Objectors provide no authority for the proposition that a foreign proceeding should be denied recognition under § 1506 even if it is assumed, *arguendo*, that "most of" Gerova's creditors do not support the liquidation. Under the circumstances of this case, it was for the Bermuda Court to decide whether the petition should be sustained, and it is not for this Court to second-guess the issue in connection with a petition for recognition. Nothing in § 1507 of the Code conditions recognition of a foreign proceeding on a cost-benefit

---

[11] *See In re Ran*, 607 F.3d 1017, 1025 (5th Cir. 2010); *In re Betcorp*, 400 B.R. 266 (Bankr. D. Nev. 2009); *In re Fairfield Sentry Ltd.,* 440 B.R. 60 (Bankr. S.D.N.Y. 2010), *aff'd*, 2011 WL 4357421 (Sept. 16, 2011). Section 1502(4) provides that "'foreign main proceeding' means a foreign proceeding pending in the country where the debtor has the center of its main interests".

[12] Section 1506 provides that "[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

analysis or approval by a majority of a foreign debtor's creditors, and this Court is unwilling to read such requirements into the statute.[13]

The foregoing is not to state that considerations of creditor interests are not relevant to the maintenance of any insolvency proceeding. Section 305 of the Bankruptcy Code provides that any bankruptcy case can be dismissed or the court can abstain where "the interests of creditors and the debtor would be better served by dismissal or suspension." 11 U.S.C. § 305(a)(1). Congress had in mind a workout that was supported by the overwhelming majority of creditors and where the bankruptcy petition was filed only by a recalcitrant minority seeking special treatment. Alan N. Resnick & Henry J. Sommer, 2 *Collier on Bankruptcy* ¶ 305.02[2][a] (16th ed. 2012). However, in the chapter 15 context, § 305(a)(2) rather than § 305(a)(1) will ordinarily be the more relevant subsection. Section 305(a)(2) provides that after a foreign proceeding has been recognized, dismissal or abstention will depend on whether "the purposes of chapter 15 of this title would be best served by such dismissal or suspension." In the instant case the purposes of chapter 15 – which include promotion of cooperation with foreign courts (§ 1501(a)(1)) – would not be served by making an order of recognition conditioned on a reexamination of the "need for" the instant insolvency proceedings.[14]

---

[13] The Objectors also contend in their Memorandum that there are no funds available to the Liquidators to support their efforts. Opposition at p.2, fn. 1. This is hardly an argument against recognition. The Liquidators' willingness to carry out their duties, notwithstanding the possible risk of non-payment is, if anything, evidence of their professionalism.

[14] It is recognized that § 305(a)(1) has been applied in connection with a U.S. involuntary proceeding brought against a foreign debtor contrary to the wishes of its court-appointed representative. *In re Compania de Alimentos Fargo, S.A.*, 376 B.R. 427 (Bankr. S.D.N.Y. 2007); *see also In re Globo Communicacoes e Participacoes S.A.*, 317 B.R. 235 (S.D.N.Y. 2004) (no foreign proceeding pending). It is also recognized that § 305(a)(2) applies by its strict terms only where a foreign proceeding has been recognized. The point is that the foreign court will ordinarily be the proper forum to deal with the issue, at least at the recognition stage.

The Objectors also argue that recognition is not "ripe" because the Bermuda Court's Order winding-up Gerova is currently on appeal. Again, the Objectors cite no authority for the proposition that a foreign proceeding should not be recognized when the order commencing that proceeding is subject to appeal. That requirement cannot be found in the plain language of § 1517. Nor can it be found in § 1515(b)(1), which requires a petitioner to submit "a certified copy of the decision commencing such foreign proceeding" but does not require the decision to be final or non-appealable. Where Congress has elected not to impose such a requirement on recognition, there is no basis for the Court to do so here. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). The order of the Bermuda Court has been adequate to permit the Liquidators to take on their duties, and if the order is reversed on appeal, § 1518 requires that the Liquidators inform this Court accordingly.

The Objectors' final contention is that recognition of the Bermuda Proceedings would be manifestly contrary to U.S. public policy because the Bermuda Court (1) allowed Gerova to be wound up involuntarily on the petition of a single creditor; and (2) gave Gerova the opportunity pay the claim of that petitioning creditor to avoid an involuntary liquidation.

Section 1506's public policy exception, however, is narrowly drafted and must be narrowly construed. *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y.2006); *In re Toft,* 453 B.R. 186, 193 (Bankr. S.D.N.Y. 2011). In the *Ephedra* case*,* for example, the District Court considered whether a claims resolution procedure in a Canadian insolvency proceeding was manifestly contrary to U.S. public policy because it denied claimants the right to a jury trial. 349 B.R. 333. The Court concluded that U.S. courts have generally enforced foreign judgments without regard to whether a jury was available, and that abrogation of the right to a jury trial in connection with the liquidation of claims in a foreign insolvency proceeding does not provide a

basis under § 1506 to refuse enforcement of a procedure that otherwise satisfied basic due process standards. The *Ephedra* Court observed that foreign judgments are generally granted comity as long as the proceedings in the foreign court "'are according to the course of a civilized jurisprudence,' *i.e.* fair and impartial," quoting *Hilton v. Guyot*, 159 U.S. 113, 205-06 (1895), and it concluded that the term "manifestly contrary to public policy" is to be invoked only under "exceptional circumstances concerning matters of fundamental importance." *Ephedra,* 349 B.R. at 336.

In the United States, § 303(b)(1) of the Bankruptcy Code requires that an involuntary bankruptcy petition filed in the United States must be supported by three or more creditors when, as here, there are more than 12 creditors in total. The three-creditor requirement, first found in the Bankruptcy Act of 1898, reflects a U.S. policy that a debtor not be forced into insolvency proceedings readily and that bankruptcy not ordinarily be used as a debt collection device available to a single creditor. *See In re Gibraltar Amusements, Ltd,* 291 F.2d 22, 28 (2d Cir.) (Friendly, J., dissenting)*, cert. denied*, 368 U.S. 925 (1961) (reviewing the legislative history of the three-creditor requirement); *see also In re Caucus Distrib., Inc.,* 106 B.R. 890, 897-98 (Bankr. E.D. Va. 1989). Although these are important policies that Congress has continued to endorse,[15] a contrary policy, permitting an involuntary case to be commenced by one creditor seeking to collect a single debt, would not violate a matter of "fundamental importance" or not be in accord with "the course of civilized jurisprudence." For example, the 1973 Report of the Commission on the Bankruptcy Laws of the United States recommended repeal of the three-

---

[15] *See* Susan Block-Lieb, *Why Creditors File So Few Involuntary Petitions and Why The Number Is Not Too Small*, 57 BROOK. L. REV. 803, 817 n.73 (1991).

creditor requirement for an involuntary petition.[16] It cannot seriously be argued that the distinguished members of the national commission whose report led directly to the 1978 Code suggested a change that violated a fundamental public policy. Moreover, the commencement of involuntary insolvency proceedings based on the petition of a single creditor is allowed by many of our closest commercial partners, including England (Insolvency Act 1986 § 124(1)) and Canada (Bankruptcy and Insolvency Act (R.S.C., 1985, c. B-3) § 43(1)). Proceedings from these countries are routinely recognized under chapter 15, and it is well-accepted that a foreign nation's bankruptcy laws need not mirror those of the United States for its proceedings to be recognized under chapter 15. *See In re Metcalfe & Mansfield Alternative Investments,* 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010); *see also Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A. (In re Bd. of Dirs. of Telecom Argentina, S.A.*), 528 F.3d 162 (2d Cir. 2008). The provision of Bermuda law allowing one creditor to commence an involuntary proceeding is not manifestly contrary to U.S. public policy.

The Objectors also fail to explain what, if any, public policy is implicated by the fact that the Bermuda Court allowed Gerova to attempt to avoid liquidation proceedings by paying the claim of the petitioning creditor, Maxim. Under U.S. law, a debtor's post-petition payment of the claim of a petitioning creditor is not prohibited, even though such payment does not defeat the involuntary case and the case cannot be dismissed without notice and a hearing. *See* 11 U.S.C. § 303(j); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540 (7th Cir. 1987); *In re Faberge Restaurant of Florida Inc.,* 222 B.R. 385 (S.D. Fla. 1997). The Bermuda Court's action

---

[16] The Commission Report recommended, among other things, that "A creditor or creditors who have aggregate claims of $2,500 be able to file an involuntary petition for liquidation of the debtor, and one or more creditors having claims of $10,000 or more be able to file a petition seeking reorganization of the debtor." Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93d. Cong., 1st Sess., pt. I, at v-xix (1973).

in authorizing payment of the Maxim debt, after notice and a hearing, did not violate a fundamental U.S. policy.

## Conclusion

For the foregoing reasons, the Liquidators' petition is granted. The Bermuda Proceedings are recognized as foreign main proceedings, and as noted above, an appropriate order has been entered.

Dated:  New York, New York
       October 22, 2012           */s/ Allan L. Gropper*
                                         UNITED STATES BANKRUPTCY JUDGE