# EXHIBIT A

## SETTLEMENT AGREEMENT AND POLICY RELEASE

This Settlement Agreement and Release (this "Agreement") is made this __ day of December 2020, by and between XL Specialty Insurance Company ("XL"), and Marshall Manley (XL and Manley are hereinafter referred to as "Parties" to this Agreement, or each separately as a "Party"), as follows:

WHEREAS, XL issued to Gerova Financial Group, Ltd. ("Gerova") its Management Liability and Company Insurance Policy No. ELU115855-10 (the "Policy"), with a Policy Period of February 14, 2010 – February 14, 2012, and a $10 million Limit of Liability;

WHEREAS, Manley is the former Chief Executive Officer of Gerova;

WHEREAS, Gerova and/or certain "Insured Persons" under the Policy gave XL notice under the Policy of numerous lawsuits that were filed against Gerova and/or other individuals, arising out of a business combination entered into by Gerova and Stillwater Capital Partners, Inc., including: (1) *Arar v. Gerova Financial Group Ltd., et al.*, 11-CV-3081 (S.D.N.Y.) ("*Arar*"); (2) *Eden Rock Finance Fund, L.P., et al., v. Gerova Financial Group, Ltd., et al.*, Supreme Court of the State of New York, New York County, Index No. 650613/2011 ("*Eden Rock*"); (3) *Margie Goldberg, et al., v. Gerova Financial Group, Ltd., et al.*, Case No. 11-CV-1385 (E.D.N.Y.) ("*Goldberg*"); (4) *Julie Russo, et al., v. Gerova Financial Group, Ltd., et al.*, Case No. 11-CV-2737 (S.D.N.Y.) ("*Russo*"); (5) *Jack Hafif, et al., v. Gerova Financial Group, Ltd., et al.*, Case No. 11-CV-3564 (S.D.N.Y.) ("*Hafif*"); (6) *Wayne Bonner v. Gerova Financial Group, Ltd. et al.*, Case No. 11-CV-3796 (S.D.N.Y.) ("*Bonner*"); (7) *Gindi v. Richard Rudy, et al.*, Supreme Court of the State of New York, New York County, Index No. 115577/2009 ("*Gindi*"); (8) *Gion Funding Settlements, Inc. v. Gerova Financial Group, Ltd.*, Case No. BC-475411, filed in the Superior Court of Los Angeles County, California ("*Gion*"); and (9) *CAC Group, Inc., v. Gerova Financial Group, Ltd.*, Case No. BC-478905, filed in the Superior Court of Los Angeles County, California (collectively, these lawsuits are hereinafter referred to as the "Lawsuits");

WHEREAS, Gerova and other Insured Persons also tendered various matters to XL for coverage under the Policy, including the Lawsuits and notice of certain subpoenas (the "Subpoenas") issued in connection with an investigation by the United States Securities Exchange Commission ("SEC") to XL for coverage, and assert that all of these matters, the Lawsuits, and the Subpoenas constitute Claims (collectively, the Lawsuits and Subpoenas are hereinafter referred to as the "Claims") under the Policy;

WHEREAS, Manley purports to have provided notice to XL (via a letter dated November 14, 2011) of a third-party lawsuit filed against him by Gerova entitled *Gerova Financial Group Ltd. v. Marshall Manley* (the "Third Party Complaint"), in the underlying lawsuit entitled *In re: Stillwater Capital Partners, Inc.*, 11-CV 2737 (S.D.N.Y.);

WHEREAS, the Third Party Complaint was voluntarily dismissed by Gerova against Manley on December 9, 2011;

WHEREAS, on or about October 7, 2011, certain purported creditors of Gerova filed a Petition to wind up Gerova (the "Winding Up Petition"), in Matter No. 369 of 2011 in the Supreme Court of Bermuda (the "Bermuda Court");

WHEREAS, the Bermuda Court entered an Order dated July 20, 2012 that Gerova be wound up; and appointed joint provisional liquidators (the "JPLs" or the "Liquidators") to oversee Gerova's affairs;

WHEREAS, the JPLs commenced a Chapter 15 Proceeding in the Bankruptcy Court in the United States District Court for the Southern District of New York entitled *In re Gerova Financial Group, Ltd.,*, Case No. 12-13641 (the "Chapter 15 Proceeding"), and filed a petition seeking recognition of the Winding Up Proceeding in Bermuda under Chapter 15 as a foreign main proceeding;

WHEREAS, the Bankruptcy Court granted the JPLs' petition by order dated October 22, 2012;

WHEREAS, XL raised various defenses to the Claims submitted for coverage,

WHEREAS, Gerova, the JPLs and certain Insured Persons, among other parties – but not Manley - entered into a settlement of the Lawsuits in a Global Settlement Agreement (the "GSA") dated December 23, 2013;

WHEREAS, XL, Gerova, the JPLs, and other Insured Persons – but not Manley - entered into a Release and Settlement Agreement (the "Insurance Release Agreement") dated December 17, 2013 in order to resolve all issues pertaining to insurance coverage under the Policy, the Claims and the Lawsuits;

WHEREAS, the terms of the Insurance Release Agreement state that the JPLs are entering into the agreement on behalf of Gerova, and all other Insured Persons under the Policy;

WHEREAS, XL contends that the terms of the Insurance Release Agreement are binding on Manley, but Manley disputes that assertion; and contends that the Insurance Release Agreement is not binding on him;

WHEREAS, on or about November 2, 2015, Manley wrote to XL, via counsel, and attached a copy of a Summons with Notice filed bearing the caption Wimbledon Financing Master Fund Ltd., v. Weston Capital Management, LLC et al., Index No. 653468/2015 in the Supreme Court of New York County, against Mr. Manley (the "Wimbledon Proceeding"; collectively the Claims, Lawsuits and Wimbledon Proceedings are herein after referred to as the "Matters"); and demanded coverage under the Policy;

WHEREAS, XL denied Manley's request for coverage via letter on December 28, 2015;

WHEREAS, Manley renewed his request for coverage for the Wimbledon Proceeding via correspondence dated February 12, 2016, to which XL responded on April 5, 2016; confirming its denial of coverage;

WHEREAS, by letter dated July 23, 2019, Manley advised XL that he had settled the Wimbledon Proceeding for a total of $600,000,.00 and incurred $188,775.14 in attorneys' fees, and demanded a total of $788,775.14 from XL;

WHEREAS, XL responded by letter on August 22, 2019; confirming its denial; and Manley's counsel responded to XL on October 22, 2019, and XL responded in kind via letter dated January 10, 2020;

WHEREAS, Manley filed a Civil Remedy Notice with the Florida Department of Insurance on March 16, 2020; to which XL timely filed a response with the Florida Department of Insurance on May 11, 2020, denying any wrongdoing;

WHEREAS, upon motion from the Liquidators, the Court administratively closed the Chapter 15 Proceeding on June 26, 2019;

WHEREAS, XL and Manley desire to resolve Manley's request for coverage under the Policy, XL's denial of coverage and other defenses to coverage, and to now and forever release any further obligation of XL under the Policy pursuant to the terms set forth in this Agreement;

NOW THEREFORE, in consideration of the covenants herein contained and other good and valuable consideration, the Parties agree as follows:

1. The effective date of this Agreement (the "Effective Date") shall be the last date upon which all of the following events have occurred:

   (a) Both Parties execute this Agreement; q

   (b) Manley re-opens the Chapter 15 Proceeding, and obtains final non-appealable approval from the U.S. Bankruptcy Court of the settlement of this Agreement via an order granting a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure;

   (c) Written confirmation is provided from Manley to XL that Manley has dismissed and/or withdrawn the Civil Remedy Notice with prejudice.

If all of the aforementioned events described in subparagraphs (a) through (c) are not satisfied, this Agreement shall be null and void and the Parties shall revert to their respective prior positions immediately prior to the date this Agreement is fully executed and shall reserve all of their respective rights, remedies and defenses.

2. Within 20 (twenty) business days after the last of the following to occur: (a) the Effective Date; (b) receipt by XL of applicable W-9 information for Manley; and (c) oral confirmation from Manley as to XL as to the wire transfer information listed below, XL shall pay the amount of $205,000.00 (Two Hundred and Five Thousand Dollars and Zero Cents) directly to Mr. Manley by wire transfer of immediately available funds to:

   Beneficiary Bank:          Citibank

| | |
|---|---|
| Beneficiary Bank Address: | 111 Wall Street, New York, NY 10043 |
| Beneficiary Bank ABA #: | 021000089 |
| Beneficiary: | Raymond James & Associates, Inc. |
| Beneficiary's Address: | 880 Carillon Parkway, St. Petersburg, FL 33716 |
| Beneficiary's Account #: | 40776559 |
| For Further Credit/FFC: | Marshall Manley (213NW525) |

3.  In consideration of the payment by XL as described in paragraph 2 above, the receipt and sufficiency of which consideration is hereby acknowledged, the Parties, each on their own behalf and on behalf of its current and former directors, officers and employees, hereby releases, acquits and forever discharges all other Parties, and their subsidiaries, affiliates, reinsurers, officers, directors, employees, agents, attorneys, executors, administrators, legal representatives, third party administrators, successors and assigns, separately or severally, from any and all manner of claims, actions, causes of action, charges, grievances, suits, damages, complaints, debts, demands, obligations, sums of money, accounts, promises, duties, controversies, judgments, contracts, costs, attorneys' fees and interest, and any and all other liabilities, of whatever kind or nature, whether arising in tort, contract, statute, law or equity, whether known or unknown, fixed or contingent, liquidated or unliquidated, and including, without limitation, all claims of bad faith insurance practices, unfair claims handling practices, or breach of the duty of good faith and fair dealing under any statute, regulation or case law, that the Parties have had, now have or may in the future have based upon, arising from, or relating in any way, in whole or in part, to:

(i) the Matters;

(ii) any reimbursement for "Defense Costs" incurred in connection with the Matters under the Policy;

(iii) any other matters asserted in, or in issue in, or underlying, arising out of, in connection with, in consequence of, in any way involving, or relating to the Matters under the Policy; and

(iv) the Policy in its entirety.

All Parties acknowledge that they may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the matters herein released and agree that this Agreement shall be and shall remain effective in all respects notwithstanding such different or additional facts or the discovery thereof. It is the intent of the Parties that the effect of this paragraph is to establish that XL and Manley have fully satisfied and extinguished their respective obligations under the Policy in their entirety, and the Policy shall have no further force or effect.

4.  Manley and XL expressly waive any and all rights they may have under any statute or common law principle that would limit the effect of the releases herein to those claims relating to the Claim that were actually known or that each such individual or entity described above in this paragraph should have known to exist at the time of execution of this Agreement,

including but not limited to, Section 1542 of the California Civil Code, which provides as follows:

> § 1542.    General Release; extent
>
> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

5. This Agreement represents a compromise and settlement of disputed rights and obligations of XL and Manley under the Policy and does not constitute and shall not be offered or construed as any kind of admission of liability on the part of XL, Manley, or any persons or entities relating in any way thereto.

6. This Agreement and all related actions and discussions during negotiations shall not be admissible in evidence in any judicial proceeding (except in a judicial proceeding in which the rights and duties under this Agreement are sought to be enforced).

7. Neither XL, nor Manley, shall be entitled to the benefit of any rule of interpretation favoring any party, including interpretation against a party as drafter, as Manley and XL have had ample opportunity to contribute to this document, have been fully and independently advised by their own counsel, and deny any reliance upon any act, omission, representation, or statement by the other as any inducement to execute this Agreement.

8. All Parties agree to cooperate fully and execute any and all supplementary documents and take any additional action which may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

9. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to applicable choice of law rules. Each of the parties hereto consents to jurisdiction and venue in a state or federal court within the State of New York in connection with any action or proceeding arising from or relating to this Agreement.

10. The Recitals of this Agreement are incorporated into the terms of this Agreement and are considered a material part hereof.

11. XL and Manley represent and warrant that the person or persons who execute and attest to this Agreement on their behalf have full and complete authority to perform said acts.

12. This Agreement shall be binding upon, and shall inure to the benefit of each party hereto and his or its respective affiliates, parents, subsidiaries, representatives, successors and assigns.

13. The terms of this Agreement are contractual and may not be changed, modified, altered, interlineated or supplemented, nor may any covenant, representation, warranty or other provision hereof be waived, except by agreement in writing signed by the party against whom enforcement of the change, modification, alteration, interlineations or supplement is sought, nor

may any covenant, representation, warranty, or other provision hereof be waived, except by agreement in writing signed by the party against whom enforcement of the waiver is sought.

14. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be deemed to compromise one and the same instrument.

15. This Agreement constitutes the entire agreement between XL, and Manley with respect to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto execute this Release and Settlement Agreement as of the dates set forth below:

XL Specialty Insurance Company

By: *[signature]*

Its: Vice President, Claims

Date: 12/14/2020

_____
Marshall Manley
Date: 12/13/20

4835-5243-5402, v. 1